

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
| | | |
|---|---|---|
| *Benjamin M. Block*<br>*Assistant United States Attorney*<br>*Benjamin.Block@usdoj.gov* | *36 S. Charles Street*<br>*Suite 400*<br>*Baltimore, MD 21201-3119* | *DIRECT: 410-209-4979*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-3124* |

May 7, 2014

Richard Woods, Esq.
10 South Street, Suite 400
Baltimore, MD 21202

    Re:    United States v. Andre Hunt, ELH-13-0628

Dear Mr. Woods:

    This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by May 7, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.    The Defendant agrees to plead guilty to a lesser included charge of Count One of the Second Superseding Indictment now pending against him, Conspiracy to Distribute and Possess with Intent to Distribute 100 grams or more of a Mixture or Substance Containing heroin, in violation of 21 U.S.C. § 846. The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.    on or around the dates charged in the Second Superseding Indictment, an agreement existed between two or more persons to violate the federal drug laws by distributing and possessing with the intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin; and

    b.    the Defendant knowingly joined in that agreement.



## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is a term of imprisonment of forty years, with a mandatory minimum term of five years; a fine of five million dollars, and a term of supervised release of at least four years, and no more than five years. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

3

a. Beginning no later than October 2012 and ending in November 2013, the Defendant, Andre Hunt, was a member of a conspiracy to distribute and possess with intent to distribute heroin. His co-conspirators included co-defendants Raymond Davis, Rashad Dendy, and others.

In furtherance of the conspiracy, the Defendant would obtain quantities of heroin from a supplier and provide those quantities to Davis, Grant, Dendy, and others, for further distribution in the area of Gilmor Homes, in West Baltimore, Maryland. The Defendant assisted in "cutting" the heroin for street distribution and in collecting the proceeds of drug sales. During much of the conspiracy, the heroin was packaged in small yellow ziplock bags and were marketed under the name "Yellow Bags." Later in the conspiracy, Hunt and others began to utilize small green ziplock bags to package the heroin.

Between July 2013 and November 2013, the Defendant participated in dozens of telephone conversations with co-defendants Davis and Dendy, which calls were intercepted and recorded pursuant to a court authorized wiretap. The Defendant was himself the subject of a wiretap order, resulting in the interception of hundreds of phone calls on the Defendant's phone. The Defendant admits that the purpose of many of his calls with Davis, and the majority of his calls with Dendy, was to discuss the purchase and sale of illegal narcotics, specifically heroin, and payments between co-conspirators relating to such narcotics sales and purchases.

For example, on August 1, 2013, at approximately 12:06 p.m., Call # B-578 was intercepted, in which Dendy, utilizing cellular phone number 424-285-4092 (designated the "B-line"), texted cellular phone 310-299-6660, utilized by the Defendant, the following: "I need her." In a subsequent phone call (B-580), at approximately 12:10 p.m., the Defendant agreed to send a female to meet Dendy. A few minutes later, the Defendant texted Dendy (B-599), "she goin hit you in like 20 mins." Later on August 1, at approximately 3:23 p.m., the Defendant called Dendy because Dendy owed the Defendant $750 but only gave the female $400. Several additional calls regarding this money dispute were intercepted. The Defendant admits that this dispute related to drug proceeds that Dendy owed the Defendant.

In call B-3227 on August 4, 2013, Dendy called Hunt asking for "testers." The Defendant admits that "testers" refer to samples of heroin pills that are distributed to demonstrate the

4

quality of the product and that he subsequently provided Dendy with "testers" of heroin.

On March 7, 2013, the Defendant was driving a black Acura sedan and was stopped by a police officer with the Baltimore Police Department. A K-9 unit responded to the scene and an external scan of the vehicle resulted in a positive hit for narcotics near the trunk of the Defendant's vehicle. No narcotics were recovered but approximately 50,000 yellow ziplock bags were seized, in addition to $4613.00 in U.S. currency. The Defendant admits that the yellow ziplock bags were possessed in furtherance of the conspiracy and intended for packaging heroin. The Defendant also admits that the $4613.00 in U.S. currency consisted of the proceeds of drug trafficking.

The Defendant and Raymond Davis maintained a "stash house" at 2441 Callow Avenue, Apt. 2A, in Baltimore, Maryland, where they hid narcotics, cutting agent and packaging paraphernalia. The apartment was used by the Defendant, Davis, and Jerome Grant as location to cut and package heroin for distribution.

On October 29, 2013, law enforcement agents observed the Defendant entering 2441 Callow and exiting after just a few minutes. Approximately one hour later, around 1:30 p.m., members of the Baltimore Police Department observed a male, later identified as Keon Joyner, approach the Defendant, who was parked and sitting in the driver's seat of a black Infiniti SUV. Joyner got into the passenger seat. As the officers approached, they observed the Defendant counting a large quantity of U.S. currency. When the Defendant looked up and saw the officers approaching, he put the vehicle in reverse and backed up at a high rate of speed until jumping the curb and striking a light pole. Both the Defendant and Joyner attempted to flee but were apprehended. Two plastic bags that were dropped by Joyner outside the vehicle were recovered and found to contain approximately 32 grams of heroin. Both Joyner and the Defendant were arrested. Approximately $2157.00 in U.S. currency was recovered from the Defendant. The Defendant admits that he sold the 32 grams of heroin to Joyner and that the $2157.00 in U.S. currency constituted the proceeds of drug trafficking.

Following Joyner's and Hunt's arrest, search warrants were executed both at 2441 Callow Avenue, Apt. 2A (the stash location) and at the Defendant's residence, 6555 Woodgreen Circle, in Gwynn Oak, Maryland. From 6555 Woodgreen Circle, law

enforcement agents recovered approximately 6.7 grams of heroin, a digital scale containing heroin residue, and approximately $6190.00 in U.S. currency.

From 2441 Callow Avenue, law enforcement agents seized approximately 1.6 kilograms of heroin, a hydraulic kilo press, a police scanner, significant quantities of narcotics packaging, and a Smith & Wesson .357 revolver, bearing serial number ANC3269. The Defendant admits that he, and other members of the conspiracy, possessed this firearm in furtherance of their drug trafficking activities.

Additional calls and surveillance proving additional conduct and conversations by the Defendant for purposes of transacting illegal narcotics would be proven by the government if this case went to trial.

The parties stipulate that based on the facts readily provable by the Government, the Defendant, along with other members of the conspiracy, conspired to distribute at least 1 but less than 3 kilograms of heroin. The Defendant admits that such quantity was within the scope of the conspiracy and reasonably foreseeable to him.

b. The parties stipulate and agree that, pursuant to U.S.S.G. § 2D1.1(c)(4), the offense level for the quantity of ~~cocaine base~~ at issue is thirty-two (32). The parties further stipulate and agree that the Defendant's base offense level should be increased by two (2) levels pursuant to U.S.S.G. § 2D1.1(b)(1) because he possessed a firearm in connection with drug trafficking.

c. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. **Therefore, the Defendant's anticipated final offense level is 31.** This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

d. Moreover, in anticipation of forthcoming changes to the Drug Quantity Table in the United States Sentencing Guidelines § 2D1.1, the United States hereby agrees not to oppose a two-level downward variance. In exchange, the defendant agrees not to seek a sentence

6

reduction under 18 USC 3582(c)(2) based on the retroactive application of Amendment # 3 to the U.S.S.G. submitted to Congress on April 30, 2014.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category and that his criminal history could alter his offense level if he is a career offender, armed career criminal, or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of criminal history and the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. If the Defendant intends to seek a sentence below the advisory guidelines range based on application of the 18 U.S.C. 3553(a) factors, the Defendant agrees to notify the Court, the United States Probation Officer and government counsel at least ten days in advance of sentencing of any facts or issues he intends to raise.

### Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence within the advisory guidelines range, as calculated by the Court. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it is above the sentencing guidelines range calculated by the Court; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is it below the sentencing guidelines range calculated by the Court.

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture of Firearm

12. The Defendant understands and agrees that as a result of his guilty plea, he will not be permitted to own, possess, or use a firearm. He forfeits all right, title, and interest in the following firearms:

a Smith & Wesson .357 revolver, bearing serial number ANC3269, ~~and ammunition~~. *CAF RCDW AH*

### Forfeiture

13. The Defendant agrees to forfeit to the United States all of his right, title, and interest in any and all money, property, or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the Defendant's illegal activities. The Defendant understands that the court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order of forfeiture may include assets directly traceable to his offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. Specifically, the court will order the forfeiture of all proceeds derived from, acquired, or retained as a result of the offense and any property used to commit or to facilitate the commission of the offense, including but not limited to:

a. Assorted Jewelry: $14,655.00 (Asset ID# 14-DEA-591996), seized on 10/30/2013 from the residence of defendant Andre Hunt, 6555 Woodgreen Circle, Gwynn Oak, Maryland;

b. One Louis Vuitton Travel Bag (Asset ID# 14-DEA-592492), seized on 10/30/2013 from the residence of defendant Andre Hunt, 6555 Woodgreen Circle, Gwynn Oak, Maryland;

c. $6,190.00 U.S. currency (Asset ID# 14-DEA-590702), seized on 10/30/2013 from the residence of defendant Andre Hunt, 6555 Woodgreen Circle, Gwynn Oak, Maryland; and

d. All other U.S. currency seized from the Defendant during the course of the investigation.

8

The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The United States reserves the right to proceed against any remaining money, property, or assets not identified in this Plea Agreement.

### Assisting the Government with Regard to the Forfeiture

14. The Defendant agrees to assist fully in the forfeiture of the foregoing assets. The Defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that he will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding and that he will testify truthfully in any such proceeding.

### Obstruction or Other Violations of Law

15. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

16. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the advisory

guidelines range, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The judge may consider any reliable evidence, including hearsay, in fashioning the sentence. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

17.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____ / CAF
Benjamin M. Block
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

05/07/2014
Date

_____
Andre Hunt

I am Andre Hunt's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

05/07/2014
Date

_____
Richard Woods, Esq.

11