



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Benjamin M. Block* | 36 S. Charles Street | DIRECT: 410-209-4979 |
| *Assistant United States Attorney* | Suite 400 | MAIN: 410-209-4800 |
| *Benjamin.Block@usdoj.gov* | Baltimore, MD 21201-3119 | FAX: 410-962-3124 |

July 16, 2014

Richard Bardos, Esq.
Schulman, Hershfield & Gilden, P.A.
401 East Pratt Street, Suite 1800
Baltimore, MD 21202

   Re: United States v. Derrick Jackson, ELH-13-0628

Dear Mr. Bardos:

  This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by May 2, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

  1. The Defendant agrees to plead guilty to a lesser included charge of Count Two of the Second Superseding Indictment now pending against him, Conspiracy to Distribute and Possess with Intent to Distribute a Quantity of a Mixture or Substance Containing Cocaine Base (crack cocaine), in violation of 21 U.S.C. § 846. The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

  2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a. on or around the dates charged in the Second Superseding Indictment, an agreement existed between two or more persons to violate the federal drug laws by distributing and possessing with the intent to distribute a quantity of a mixture or substance containing a detectable amount of cocaine base (crack cocaine); and

    b. the Defendant knowingly joined in that agreement.

1

## Penalties

3.  The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is a term of imprisonment of twenty years, a fine of one million dollars, and a term of supervised release of at least, and no more than, three years. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.  The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a.  If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c.  If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

        d.        The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

        e.        If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.        By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

        g.        If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

        h.        By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

3

a.      Beginning no later than September 2013 and ending no later than November 2013, the Defendant, Derrick Jackson, was a member of a conspiracy to distribute and possess with intent to distribute cocaine base (crack cocaine). His co-conspirators included co-defendants Dominique Smith and Christopher Thomas.

In furtherance of the conspiracy, the Defendant would travel from Frederick, Maryland, where he lived, to Baltimore, Maryland, for the purpose of purchasing cocaine base. The Defendant would contact Dominique Smith to inform him that he wished to purchase cocaine base. Smith would then arrange a meeting with Chris Thomas, who would supply the Defendant with the illegal narcotics. The Defendant would then return to Frederick and distribute the cocaine base in Western Maryland.

Between September 2013 and November 2013, the Defendant participated in dozens of telephone conversations with co-defendant Dominique Smith, which calls were intercepted and recorded pursuant to a court authorized wiretap. The Defendant made or received approximately 86 calls with Smith between September 17, 2013 and October 8, 2013. The Defendant admits that the primary purpose of these calls was to discuss the purchase and sale of illegal narcotics, specifically crack cocaine, and payments between co-conspirators relating to such narcotics sales and purchases.

For example, on September 25, 2013, at approximately 5:11 p.m., Call # E-5917 was intercepted, in which Smith, utilizing cellular phone number 443-562-2464 (designated the "E-line"), called cellular phone 240-522-7009, utilized by the Defendant. Smith asked the Defendant, "what's up?" The Defendant responded, "are you going to be ready for me tonight?" Smith said, "yeah, I'm glad you called and warned me." At approximately 10:46 p.m., Smith called Christopher Thomas (Call #E-6059) and stated that his "little man wants to come through tonight." Thomas replied that he was "up Park Heights and ready to go downtown" to a nightclub. Smith told Thomas he would call Thomas "when yo calls," referring to the Defendant. At approximately 10:57 p.m., Smith called the Defendant (Call #E-6060) to ask him where he is because his "man is about to go out." The Defendant told Smith he was ½ hour away and asked whether Smith's supplier was "going to get back at him on the double up tip." Smith then called Thomas again, at approximately 10:59 p.m. (Call #E-6061) to tell him that Jackson wants to "double up." Thomas responded, "tell him I only got the one, yo." Additional

4

calls took place between Smith and the Defendant regarding the timing of the meeting between the Defendant and Thomas. At 12:07 a.m. on September 26, 2013, Smith texted Thomas (Call #E-6098), "same spot 20 min." At 12:20, Thomas texted Smith (Call #E-6116), "Tell yo 20 min." At approximately 1:08 a.m., the Defendant met with Thomas in the 2800 block of Walbrook Avenue in Baltimore, Maryland, and purchased approximately one ounce of crack cocaine. This meeting was observed by law enforcement agents conducting surveillance.

The Defendant admits that these conversations on September 25 and 26, 2013, were for the purpose of arranging a purchase of crack cocaine by him from Thomas and that he wanted to purchase 2 ounces of crack cocaine from Thomas but Thomas only had one ounce to sell him.

On September 28, 2013, law enforcement agents intercepted another series of calls between Jackson and Smith in which the purchase of an ounce of cocaine base was discussed. At approximately 11:37 a.m., Smith called the Defendant (Call # E-6748) and asked: "Whatchu needed? Whatchu wanted, the two, or the one today?" The Defendant replied, "Um, shit. I'm gonna just, um, go with the one time again. I, see, see if he can get it, see if he can get it all together, yo, and bring his reader, yo, so it won't be no discrepancies or nothing...." At approximately 12:33 p.m., Smith called Thomas (Call # E-6762) and advised that Jackson wanted the drugs "all in one, instead of how you be doin' it." Thomas responded, "yeah, yeah, yeah."

In response to these calls, law enforcement agents established surveillance in the area of 2600 Walbrook Avenue, where the Defendant and Thomas previously met, and at Thomas's residence. At approximately 3:00 p.m., Thomas left his residence. At approximately 4:05 p.m., the Defendant parked in the 2600 block of Walbrook Avenue. At approximately 4:10 p.m., Thomas arrived and parked in the 2600 block of Walbrook Avenue. The Defendant exited his vehicle and entered Thomas's vehicle. Moments later, the Defendant returned to his vehicle and departed the area. In conjunction with this investigation, law enforcement agents executed a traffic stop on Jackson's vehicle on Interstate 70 near Maryland Route 94. Approximately 27 grams of cocaine base was recovered from the Defendant's person. The narcotics were tested and confirmed to be cocaine base.

Additional calls and surveillance proving additional meetings between the Defendant and Thomas for purposes of

transacting illegal narcotics would be proven by the government if this case went to trial.

The parties stipulate that based on the facts readily provable by the Government, the Defendant, along with other members of the conspiracy, conspired to distribute at least 112 grams, but less than 196 grams, of cocaine base. The Defendant admits that such quantity was within the scope of the conspiracy and reasonably foreseeable to him.

    b.    The parties stipulate and agree that, pursuant to U.S.S.G. § 2D1.1(c)(6), the offense level for the quantity of cocaine base at issue is twenty-eight (28).

    c.    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. **Therefore, the Defendant's anticipated final offense level is 25.** This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

    d.    Moreover, in anticipation of forthcoming changes to the Drug Quantity Table in the United States Sentencing Guidelines § 2D1.1, the United States hereby agrees not to oppose a two-level downward variance. In exchange, the defendant agrees not to seek a sentence reduction under 18 U.S.C. §3582(c)(2) if the proposed changes become effective.

7.    The Defendant understands that there is no agreement as to his criminal history or criminal history category and that his criminal history could alter his offense level if he is a career offender, armed career criminal, or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.    This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Rule 11 (c) (1) (C) Plea

9. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of 36 to 60 months imprisonment on Count Two, in the custody of the Bureau of Prisons, is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

### Obligations of the United States Attorney's Office

10. At the time of sentencing, this Office will recommend a sentence within the range agreed to by the parties, to be served in the custody of the Bureau of Prisons. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds 60 months imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below 36 months imprisonment.

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d.  The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

    13.  The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

    14.  The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

    15.  This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

  If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

8

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Benjamin M. Block
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

07/22/2014                               _____
Date                                     Derrick Jackson

I am Derrick Jackson's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

7/22/14                                  _____
Date                                     Richard Bardos, Esq.